DS13 2449

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF TEXAS

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2021 JUL -9 PM 3:01

DEPUTY CLERK_____ **mb**

Joe Hunsinger
  Plaintiff Pro-Se'

Case No:

V.

**8 - 21 CV 1598 - D**

Alpha Cash Buyers, LLC.
  Defendants

# COMPLAINT

## 1.0  PARTIES

1.1   Joe Hunsinger is a an individual citizen of Texas and a resident of this District.

1.2   Defendant Alpha Cash Buyers, LLC.  is a Domestic corporation with its principal place of business at 8561 Delta Way, Fort Worth, Texas 76123. Tarrant County.

1.3   Defendant can be served by their agent United States Corporation Agents, INC. at 9900 sprectrum dr., Austing, Texas 78717.

1.4   Vincent Ajaegbu and Jonathan Sucamele are the managing members of Alpha Cash Buyers, LLC.

## 2.0  JURISDICTION AND VENUE

2.1    This court has personal specific jurisdiction pursuant to 28 USC Section 1331 and 47 USC Section 227.

2.2    Supplemental jurisdiction for Plaintiffs state law claims arise under 28 USC Section 1391(b)(2).

2.3    This Court has personal specific jurisdiction over Defendant because defendant made calls to Plaintiff in this District and Defendant conducts business in the State of Texas.

## 3.0  PRELIMINARY STATEMENT

3.1    This is an action for damages brought by an individual consumer for violations of the TCPA, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive and nuisance telemarketing practices.

3.2    Senator Hollings, the TCPA's sponsor, described these call as "the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of be; they hound us until we want to rip the telephone out of the wall."

3.3    According to findings by the FCC, the agency congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls.

3.4    The national DNC registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  Plaintiff hereby requests a copy of Defendants DNC Policy.

3.5    The TCPA regulations define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."

3.6    Telemarketing occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services.

3.7    Neither the TCPA nor its implementing regulations require an explicit mention of a good, product, or service – where the implication of an improper purpose is "clear from the context."

3.8    In other words, "offers that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.

3.9    If a call is not deemed telemarketing, a Defendant must nevertheless demonstrate that it obtained the Plaintiffs prior express consent.

3.10   The FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages.

3.11   "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients."

3.12   Plaintiff has been harmed by Defendants' acts because his privacy has been violated.  Plaintiff was subject to annoying and harassing telephone calls (texts) that constitute a nuisance.

3.13   Telemarketers must obey the prohibitions in the TCPA.

3.14   Telemarketing is defined as "a plan, program, or campaign which is conducted to induce the purchase of goods or services or charitable contribution

by use of one or more telephones and which involves more than on interstate telephone call.

3.15 Plaintiff establishes injury in fact, if he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."

3.16 Plaintiff has the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA.

3.17 Plaintiffs "express consent" is not an element of Plaintiffs prima facie case, but is an affirmative defense for which the Defendant bears the burden of proof.

3.18 One single unsolicited marketing text or call is all it takes for a Plaintiff to have standing and bring suit against a violator of the TCPA.

3.19 The TCPA does not bar all business-related text messaging, but instead, focuses, in part, on cellular calls and text messages that are for the purpose of soliciting new or additional business.

3.20 Defendants actions are a pattern and practice over time.

3.21 Defendants, in its alleged violation, was aware of the conduct and allowed it to continue.

3.22 The impersonal and generic nature of Defendants text message(s), demonstrate that Defendant utilized an ATDS in transmitting the message.

3.23 Text message advertisements and the use of a short code, support an inference that the text messages use ATDS.

3.24  Plaintiff has alleged facts sufficient to infer text messages were sent using ATDS – use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS.

3.25  Defendant used a "long code" to transmit a text to the Plaintiff.  A long code is a standard 10-digit phone number that enabled Defendant to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized.  Defendant can copy and past and send hundreds of characters out with a few clicks.

3.26  Long codes work as follows:  Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic.  These SMS gateway providers send and receive SMS traffic to an from the mobile phone networks SMS centers which are responsible for relaying those messages to the intended mobile phone.  This allows for the transmission of a large number of SMS messages to and from a long code.

3.27  Specifically, upon information and belief, Defendant utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by Defendant have the capacity of store telephone numbers and to dial such number from a list.

3.28  Defendants unsolicited calls/text message(s) caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.  Defendants text messages also inconvenienced Plaintiff and caused disruption of his daily life.

3.29  Unwanted "Robocalls" are the number one complaint in America today. Americans received over 47 billion robocalls just year.

3.30  Plaintiff estimates he has received tens of thousands of unauthorized and unwanted text messages and calls in his lifetime from telemarketers.  Some have been from repeat violators and some have been from single call/text violators. The Bureau of Labor Statistics tells us there are 134,800 telemarketers in the USA.

If this information is correct American consumers could quite possibly receive 369.31 calls per day and we have to tell the telemarketers is to place us on their do not call list and we won't hear from them in another 12 months, and then process begins all over again?  Plaintiff does not want to have his phone ring or text 369.31 times a day from telemarketers.  Plaintiff does not even want one telemarketer to call him.  There is a reason they say we as a nation may disagree on many issues, but when it comes to unwanted telemarketing (Robocalls/texts) we all agree that we do not like them.

3.31  The contempt from Senator Hollings was he even wanted to do away with all telemarketers, period.  Plaintiffs pleading as mentioned above are clear and give an insight on where Plaintiff set of mind.   How he wants to left alone and unbothered by telemarketing calls/texts.

3.32  The do not call provisions of the TCPA cover any plan, program or campaign to sell goods or services through interstate phone calls. This includes calls by telemarketers who solicit consumers, often on behalf of third party sellers.

3.33  The TCPA has a "safe harbor" for inadvertent mistakes.  If a telemarketer can show that, as part of its routine business practice, it meets all the requirements of the safe harbor, it will not be subject to civil penalties or sanctions for mistakenly calling a consumer who has asked for no more calls, or for calling a person on the registry.

3.34 Plaintiffs complaint seeks money damages and injunctive relief from Defendants illegal conduct.

3.35 This private cause of action is a straight forward provision designed to achieve a straightforward result.  Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights.  Violations of the law are clear, as is the remedy.

3.36  The TCPA was enacted to prevent companies like Defendant from invading Plaintiffs' privacy as explained in paragraph 3.27 and 3.28.

3.37  Defendant(s) uses telemarketing to obtain new customers.

3.38  If Defendant(s) want to avoid a TCPA lawsuit, all they have to do is not break the laws in the TCPA.

## 4.0  VICARIOUS LIABILITY

4.1    At all times relevant the the events giving rise to this lawsuit, Defendant acted through its agents and is therefore liable for such actions pursuant of vicarious liability principles.

4.2    Whenever it is stated herein that Defendant engaged in any act or omission, the statement includes the acts or omissions by Defendant, its agents, its employees, its representatives and others with actual or apparent authority to act on behalf of and bind the Defendant.

## 5.0  QUESTIONS OF LAW

5.1    There are well defined and nearly identical questions of law and fact that affect all parties.  Such common questions of law and fact include, but are not limited to, the following:

5.2    Whether Defendant(s) placed such telephone calls to the Plaintiff;

5.3    Whether Defendant(s) TCPA violations and conduct was knowing and/or willful:

5.4    Whether Defendant(s) can meet their burden of showing that they clearly and unmistakably obtained "prior express consent" to make such calls/texts to the Plaintiff;

5.5   Whether Defendant(s) are liable for damages to the Plaintiff, as well as the amount to of such damages;

5.6   Whether Defendant(s) identified themselves to the Plaintiff or if their agents identified the entity on whose behalf the call/text was being made;

5.7   Whether Defendant(s) sent Plaintiff their DNC policy when it was requested;

5.8   Whether Defendant(s) uses telemarketing to obtain new customers;

5.9   Whether Defendant(s) have a written DNC policy;

5.10  Whether Defendant(s) written DNC policy was shared with anyone "on demand.";

5.11  Whether Defendant(s) can prove they trained their employees about the telemarketing rules and laws set in place;

5.12  Whether Defendant(s) have maintained a list of persons that they may not contact;

5.13  Whether Defendant(s) have a process in place to prevent phone calls to either numbers on the National Do Not Call List or numbers on the telemarketers internal do not call list;

5.14  Whether Defendant(s) have a process in place to monitor calls to prevent violations of the do not call list;

5.15  Whether Defendant(s) have maintained an errant list of all call that violate the do not call regulations;

5.16  Whether Defendant(s) can prove they used TCPA compliant vendors;

5.17  Whether Plaintiff opted out of receiving calls/texts from Defendant.

5.18  Whether Defendant(s) honored Plaintiffs opt out/stop request.

5.19  Whether Defendant(s) had reason to know, or should have known that its conduct would violate the statute.

5.20  Whether Plaintiff is entitled to injunctive relief;

5.21  Whether Defendant(s) should be enjoined from engaging in such mentioned conduct in the future;

5.22  Common questions in this case have common answers.

## 6.0  FACTUAL ALLEGATIONS
## ALPHA CASH BUYERS LLC.

6.01  Plaintiff has received several phone calls from Defendant from their phone number 817-207-7938 to his cell phone number ending in 8146.  All of these phone calls were unauthorized, unwanted, and illegal telemarketing phone calls.

6.02  At no time did Defendant identify themselves to Plaintiff, other than Albert. So all this time Plaintiff had no idea who it was that was calling him, other than Albert.

6.03  On Monday 6-28-2021, at 12:33 PM, Plaintiff received **one** unauthorized, unwanted, and illegal telemarketing phone, from phone number 817-207-7938, from Defendants agents wanting to buy real property from Plaintiff, to his phone number ending in 8146.  The caller did not identify themselves, other than Albert.

6.04  At this point Defendant had been calling Plaintiff several times with their telemarketing calls, not disclosing the company they were calling on behalf of. Plaintiff cannot bring an action against an "Albert".

6.05  Plaintiff, wanting to find out who was sending the unauthorized text messages in violation of the TCPA, gave his email to them.

6.06  On Friday 7-2-2021, Plaintiff spoke to Defendant on three occasions, at 1:14 PM, 1:44 pm, and 3:43 PM from their unauthorized, unwanted, and illegal telemarketing phone, from phone number 817-207-7938, from Defendants agents wanting to buy real property from Plaintiff, to his phone number ending in 8146.

6.07  On 2-17-2021 Plaintiff received an email from Albert Tristan from albert@alphacashbuyers.com.  The email Plaintiff received from Defendant is connected to the  unauthorized, unwanted, and illegal telemarketing phone calls

and text messages. The email, without a doubt, identifies the true identity of the Defendants.

6.08 On Saturday 7-3-2021 at 2:51 PM, Plaintiff received two unauthorized, unwanted, and illegal telemarketing texts, from phone number or long code 817-207-7938, from Defendants agents wanting to buy real property from Plaintiff, to his phone number ending in 8146.

6.09 Plaintiff did not have to contact Defendant afterwards to find out their legal name or who they were working for or the company name. Of all the freaking junk Plaintiff has gone through with telemarketers, never, not one time, has a telemarketer given their true identity (to their legally registered business in the US) to Plaintiff. One time, a few years ago, a telemarketer did give Plaintiff their business name and phone number and website and agents name and supervisor name and was actually passed on to the supervisor who took Plaintiffs call. They answered all of Plaintiffs questions without any hesitation. They were an web hosting / promotion company in South America.

6.10 Plaintiff is informed and believes and therefore alleges that texts that Defendant placed to him were made using an automatic telephone dialing system.

6.11 A telemarketer must provide their name, and the corporate name or registered name of the organizaition (to the consumer) that they are contacting consumers on behalf of.

6.12 Defendant did not properly identify themselves to Plaintiff.

6.13 In total, Plaintiff received **eight** phone calls and **two** texts from Defendant.

## 7.0  FACTUAL ALLEGATIONS
## CONTINUED

7.01  Plaintiff, searching on the Texas Secretary of State's website [and paying their search fees], found Defendant Alpha to be registered as a Domestic LLC. In the State of Texas.

7.02  Plaintiff searched Defendant on Pacer [and also paid their fees to search and look at pleadings] and did not find other complaints against the Defendants for violations of the TCPA.

7.03  Plaintiff, at no time, gave Defendant his "express consent" to be contacted by text messages.

7.04  Part of Plaintiffs discovery will will be finding out if Defendant has a company wide pattern or practice of engaging in the alleged illegal practices at issue in my case.  Plaintiff is proffering that a number of similar incidents have occurred around the country to other everyday people.

7.05  In this alleged action, it is the Plaintiffs belief the Defendant uses short codes to run his telemarketing campaign to text people from a phone number and if they don't respond he (they) is back at it contacting the same people who did not respond with a new number.

7.06  The text placed by the Defendant was not necessitated by an emergency.

7.07  Defendants comercial telemarketing texts were transmitted to Plaintiffs cellular telephone, and within the time frame relevant to this action.

7.08  Defendant and/or their agents failed to properly identify themselves as required by the TCPA.

7.09  Plaintiff is not a customer of Defendant and has not provided defendant with his personal information or telephone number, or sought out solicitation from the Defendant or their agents.

7.10  It is Defendants burden to prove they has "express consent" per the TCPA to call the Plaintiff on his cell phone using an "automatic telephone dialing system."

7.11  At no time did Plaintiff provide prior express written consent, or even prior permission, for the Defendant or their agents to call the Plaintiff.

7.12  Plaintiff does not have and has never had an established business relationship with the Defendant.

7.13  The text received by the Plaintiff from the Defendant or their agent was for the purpose of encouraging the purchase of rental of, or investment in, property, goods, or services.  The call therefor qualifies as telemarketing.

7.14  Plaintiff is the subscriber of phone number ending in 8146 and is financially responsible for phone service to said number.

7.15  Plaintiff's phone number ending in 8146 is primarily used for personal, family, and household use.

7.16  Upon information and belief, Defendants calls harmed the Plaintiff by causing the the very harm that Congress sought prevent – that is the "nuisance and invasion of privacy" and a Plaintiff suffered a concrete and particularized harm.

7.17  Upon information and belief, Defendants texts harmed Plaintiff by intruding upon Plaintiffs seclusion, lost time attending to unsolicited, unwanted and unauthorized calls, decreased phone battery life, need for more frequent re-charging of the battery, annoyance, and frustration.

7.18  The FCC has instruct that sellers such as Defendants may not avoid Liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without effective remedy for telemarketing intrusions.  This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case.  Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separarately in order to obtain effective relief.  As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumers privacy."

May 2013 FCC Ruling. 28 FCC Red at 6588(Paragraph 37) (internal citations omitted).

7.19  In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations.  id. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 USC Section 227(b).

7.20  The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  See in re Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Red 12391, 12397 (Paragraph 13)(1995).

7.21  Depot, or some unnamed entity working on Depot's behalf, made several autodialed calls described in this Complaint "on behalf of" Defendants withing the meaning of the FCC's Declaratory Rulings and 47 USC Section 227(c)(5).

7.22  On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contacts out is telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of ...section 227(b) that are committed by third-party telemarketers"  See In re Joint Petition filed by Dish Network, LLC., et al, for Declaratory Ruling Concerning the TCPA Rules, CG Docket No. 11-50, Declaratory Ruling, 28 FCC Red 6574, 6574 (paragraph 1)(May 9, 2013)("May 2013 FCC Ruling").

7.23  More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has aparent (if not actual) authority" to make the calls.   28 FCC Red at 6586 (paragraph 34)

7.24  The fact is after an illegal telemarketing text Plaintiff has begun to receive multiple emails a day from Defendant.

7.25  The FCC has repeatedly rejected a narrow view of the TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing cal, id at 6587 n. 107.

7.26  The may 2013 Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller alows the outside sales entity access to information and systems that normally would be within the Sellers's exclusive control, including: access to

detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information.  The ability by the outside sales entity to enter consumer information into the seller's sales or customer system, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant.  It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer ti cease that conduct.

28 FCC Red at 6592 (paragraph 46).

7.27 Defendants were legally responsible for ensuring that their vendors complied with the TCPA, even if Defendants did not themselves make the calls.

7.28  Defendant were legally responsible for ensuring that their vendors complied with the TCPA, even if Defendants did not themselves make the calls.

7.29 Defendants knew (or reasonably should have known( that their vendors were violating the TCPA on their behalf, and failed to take effective steps within their power to force the telemarketer to cease that conduct.

7.30  Defendants calls were transmitted to Plaintiffs cellular telephone, and within the time frame relevant to this action.

7.31  Defendant and/or their agents failed to properly identify themselves as required by the TCPA.

7.32 Upon information and belief, Defendants calls harmed the Plaintiff by causing the the very harm that Congress sought prevent – that is the "nuisance

and invasion of privacy" and a Plaintiff suffered a concrete and particularized harm.

7.33  Upon information and belief, Defendants calls harmed Plaintiff by intruding upon Plaintiffs seclusion.

7.34  As a result of Defendant illegal conduct, Plaintiff is entitled to $500 in damages for each such violation of the TCPA.  This is for each and every violation, whether Defendants committed multiple violations with a single phone call.

7.35  As a result of Defendant illegal conduct, Plaintiff is entitled to $500 in damages for each such violation of the TCPA.  This is for each and every violation, whether Defendant committee multiple violations with a single text.  The number of texts are irrelevant.

## 8.0 STANDING

8.01  Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) a valid injury in fact; (b) which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision.

8.02  Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution.

8.03  For an injury to be "concrete" it must be a de facto injury, meaning that it actually exists. In Plaintiffs case, Defendant sent a text messages to Plaintiff's cellular telephone, using an ATDS. Such text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and de facto.

8.04  For an injury to be "particularized" means that the injury must "affect the

Plaintiff in a personal and individual way." In Plaintiffs case, Defendant invaded Plaintiffs privacy and peace by texting his cellular telephone, and did this with the use of an ATDS.  Furthermore, Plaintiff was distracted and annoyed by having to take time, opening and reading the text message. All of these injuries are particularized and specific to Plaintiff.

8.05  Plaintiffs case passes The " Traceable to the Conduct of Defendant" Prong.

8.06  The second prong to establish standing at the pleadings phase is that Plaintiff must allege facts to show that its injuries are traceable to the conduct of Defendant. The above text message was directly and explicitly linked to Defendant.  The number from which the text was sent belongs to Defendant. This text message is the sole source of Plaintiff's and the Class's injuries. Therefore, Plaintiff has illustrated facts that show that her injuries are traceable to the conduct of Defendant.

8.07  Plaintiffs case passes the " Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong,

8.08  The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion In the present case, Plaintiff's Conclusion include a request for damages for each text message made by Defendant, as authorized by statute in  47 USC. Section 227. The statutory damages were set by Congress and specifically  redress the financial damages suffered by Plaintiff.

8.09  Plaintiff, under his 14 Amendment rights, has right to bring this action to be heard in front of a jury.

8.10  Because all standing requirements of Article III of the US Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

## COUNT 1

11.01 Plaintiff re-alleges and incorporates the above paragraphs.

11.02 Defendant violated 47 USC Section 227(b)(1)(A)(iii) by placing (non emergency) <u>solicitation texts</u> to the Plaintiff.

11.03 Defendant must pay Plaintiff $500 for each text placed to Plaintiff.

## COUNT 2

12.01 Plaintiff re-alleges and incorporates the above paragraphs.

12.02 Defendant transmitted **ten** <u>solicitation texts and </u>calls to Plaintiffs cellular phone number, which was registered on the Do Not Call registry, violating 47 CFR Section 64.1200(c).

12.03 Defendant must pay Plaintiff $500 for each text placed to Plaintiff.

## COUNT 3

13.01 Plaintiff re-alleges and incorporates the above paragraphs.

13.02 Defendant knew or should have know that Plaintiff had not given <u>express consent</u> to receive its texts messages violating USC Section 227(b)(3)(C).

13.03 Defendant must pay Plaintiff $500.

## COUNT 4

14.01 Plaintiff re-alleges and incorporates the above paragraphs.

14.02 Defendant transmitted a text to the Plaintiff, despite the fact that Plaintiffs phone number <u>is listed on the DNC list</u>, a violation of USC Section 227(c).

14.03 Defendant must pay Plaintiff $500.

## COUNT 5

15.01 Plaintiff re-alleges and incorporates the above paragraphs.

15.02 Defendant transmitted <u>more than one text or call</u> to the Plaintiff **(ten)**, a violation of USC Section 227(c)(5)(B).

15.03 Defendant must pay Plaintiff $500 for each text placed to the Plaintiff.

## ~~COUNT 6~~

~~16.01 Plaintiff re-alleges and incorporates the above paragraphs.~~

~~16.02 Defendant spoofed their caller id.   The phone numbers on displayed on Plaintiffs caller id were long codes.  Plaintiff cannot call Defendants long code and speak to someone.  A violation of 47 CFR Section 64.1601(4)(e).~~

~~16.03 Defendant failed to provide a call back number in the initial text message. A violation of 47 CFR Section 64.1200(b)(2).~~

~~16.04 Defendant must pay Plaintiff $500.~~

## COUNT 7

17.01 Plaintiff re-alleges and incorporates the above paragraphs.

17.02 Defendant made calls to Plaintiffs phone ending in 8146 intentionally or knowingly and the calls were not accidental.

17.03 Pursuant to TBCC Section 305.053, Plaintiff sues here for monetary damages.

17.04 Pursuant USC Section 227(c)(5) and 47 CFR Section 64.1200(a)(2), treble the $500 statutory damages to be recoverable by Plaintiff against the Defendant

to $1500 for each transmitted text Defendant placed and for violating the the DNC request.

17.05 Defendant must pay Plaintiff $1500 for each violation and text transmitted to Plaintiff.

## COUNT 8

18.01 Plaintiff re-alleges and incorporates the above paragraphs.

18.02 Pursuant to 47 USC Section 227(b)(3)(A) and TBCC Section 305.053, the court following the trial of this action should issue an order permanently enjoining Defendant and its agents from engaging in any further conduct with respect to Plaintiff which violates the rules and regulations of 47 USC Section 227.

## COUNT 9

19.01 Plaintiff re-alleges and incorporates the above paragraphs.

19.02 Defendant intentionally intruded on Plaintiffs solitude, seclusion, and private affairs by transmitting unsolicited telemarketing calls to his cellular phone. Defendants intrusion would be highly offensive to a reasonable person.

19.03 The repeated autodialed calls to Plaintiffs cellular phone have caused him emotional harm and distress, frustration, aggravation, wasted time, a nuisance and other losses.

19.04 Plaintiff seeks to recover actual damages, including his damages for mental anguish, to be proven at trial.  Mental anguish is one of the torts for which Plaintiff can recover mental-anguish damages without proving physical injury.

## TRIAL BY JURY

20.01   Plaintiff demands a trial by jury under the 7th Amendment of the US Constitution.

## CONCLUSION

Plaintiff has read Dondi Properties Corp. v. Commerce Savs. & Loan Ass'n which pretty much establishes the conduct for attorneys and references abusive litigation tactics from attorneys conduct.   Plaintiff believes if Defendant would read Dondi and instruct their attorney to send copies of the filings and emails between the Plaintiff and Defendants attorney, this would keep the Defendants attorney from "poking a stick at Plaintiffs ribs" just to upset him and try to prolong the hours he will be charging his client.

Plaintiff requests a copy of Defendants Do-Not-Call Policy to be sent to Plaintiffs address below.

Plaintiff requests everything he has asked for in his Complaint and other relief as the Court deems necessary.

Joe Hunsinger – Pro se
7216 CF Hawn Frwy.
Dallas, Texas 75217
214-682-7677
joe75217@gmail.com

← **(817) 207-7938 (8)**  🗑

**Create contact**   **Update contact**

**Jul 3 (Sat) 2:46 PM**
Fort Worth, TX

**Jul 2 (Fri) 3:43 PM**
Fort Worth, TX

**Jul 2 (Fri) 2:36 PM**
Fort Worth, TX

**Jul 2 (Fri) 1:44 PM**
Fort Worth, TX

**Jul 2 (Fri) 1:14 PM**
Fort Worth, TX

**Jun 28 (Mon) 12:33 PM**
Fort Worth, TX

**Jun 24 (Thu) 2:39 PM**
Fort Worth, TX

**Jun 21 (Mon) 12:03 PM**
Fort Worth, TX

**(817) 207-7938**

Create contact    Update contact

(817) 207-7938

Jun 28 (Mon) 12:33 PM
Fort Worth, TX

**(817) 207-7938**

Create contact   Update contact

(817) 207-7938   📞   💬

Jun 24 (Thu) 2:39 PM
Fort Worth, TX

← (817) 207...   📹   📞   🔍   ⋮

*7-3-2021*

**Saturday • 2:51 PM**

*2:51 Pm*

Hey Joseph, Albert here. Just checking in to see if you had any questions on the agreement. Thnx.

Hey Joseph, Albert here. Just checking in to see if you had any questions on the agreement. Thnx.

Sat 2:51 PM

Text message