IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOE HUNSINGER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:21-CV-1598-D |
| | § | |
| ALPHA CASH BUYERS, LLC, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

*Pro se* plaintiff Joe Hunsinger ("Hunsinger") sues defendant Alpha Cash Buyers, LLC ("Alpha Cash"), alleging, *inter alia*, violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Alpha Cash moves to dismiss Hunsinger's amended complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. Hunsinger opposes the motion, and, in the alternative, requests leave to amend. For the reasons that follow, the court grants in part and denies in part Alpha Cash's motion to dismiss, and it also grants Hunsinger leave to amend.

I

The court assumes the parties' familiarity with its prior memorandum opinion and order in this case, *see Hunsinger v. Alpha Cash Buyers, LLC* (*Hunsinger I*), 2021 WL 5040228, at *1 (N.D. Tex. Oct. 29, 2021) (Fitzwater, J.), and recounts the facts and procedural history only as is necessary to understand this memorandum opinion and order.

This case arises out of eight unsolicited telephone calls and six Short Message Service ("SMS")[1] text messages that Hunsinger received on his cellular telephone in 2021. These telephone calls and text messages all originated from a ten-digit telephone number, or an SMS "long code,"[2] ending in 7938.

On June 28, 2021 Hunsinger received and answered one of these unsolicited telephone calls. The caller did not identify himself other than as "Albert," and did not disclose the company on whose behalf he was calling. To identify the caller, Hunsinger provided his email address to Albert. And based on the subsequent email he received, Hunsinger was able to determine that Alpha Cash was responsible for the telephone calls and text messages.

Following these calls, Hunsinger received on July 3, 2021 two identical text messages that read: "Hey Joseph, Albert here. Just checking in to see if you had any questions on the agreement. Thnx." Am. Compl. 35. On July 7, 2021 Hunsinger received additional text messages signed by Albert. Hunsinger alleges that these text messages were sent using an Automatic Telephone Dialing System ("ATDS"). On October 9, 2021 Hunsinger also received a call from Vincent Ajaegbu ("Ajaegbu"), a managing member of Alpha Cash. Hunsinger alleges that this call was placed using a third party vendor and that there were "a few seconds of pause" between when he answered the call and when Ajaegbu came on the

---

[1] SMS messages are standard text messages on cellular devices. *See Jovanovic v. SRP Invs. LLC*, 2021 WL 4198163, at *3 n.1 (D. Ariz. Sept. 15, 2021).

[2] "SMS long codes are standard ten-digit telephone numbers including an area code, used by individual and business subscribers alike." *Id.* Text messages can also be sent from "SMS short-code[s]," which are "four to six digit telephone number[s] used only for texting, and most frequently for commercial marketing purposes." *Id.*

line. *Id.* ¶ 6.33.

Hunsinger filed this action on July 9, 2021. Alpha Cash moved to dismiss Hunsinger's complaint under Rule 12(b)(6), and the court granted the motion but also granted Hunsinger leave to replead. *See Hungsinger I*, 2021 WL 5040228, at \*4. Hunsinger thereafter filed the instant amended complaint, alleging, *inter alia*, violations of 47 U.S.C. § 227(b)(1)(A)(iii) for using an ATDS to place telephone calls, and send text messages, to Hunsinger's cellular telephone without his prior express consent, as required by 47 C.F.R. § 64.1200(a)(1); violations of 47 C.F.R. § 64.1200(c)(2) for making more than one telephone solicitation to a person on the National Do-Not-Call Registry in a 12-month period; violations of 47 C.F.R. § 64.1200(d) for failing to institute procedures for maintaining a list of persons who request not to receive telemarketing calls and failing to provide Alpha Cash's Do-Not-Call Policy upon Hunsinger's request; violations of Tex. Bus. & Com. Code Ann. § 305.053, which provides a private right of action for violations of the TCPA; and a violation of the common law right to privacy based on unreasonable intrusion on seclusion. Alpha Cash now moves to dismiss Hunsinger's amended complaint pursuant to Rule 12(b)(6). Hunsinger opposes the motion. The court is deciding the motion on the briefs.

II

In deciding Alpha Cash's Rule 12(b)(6) motion, the court evaluates the sufficiency of Hunsinger's complaint by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d

464, 467 (5th Cir. 2004)). To survive a motion to dismiss, Hunsinger must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. But because Hunsinger is proceeding *pro se*, the court construes the allegations of the complaint liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980) (per curiam); *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (per curiam).

### III

The court first addresses Alpha Cash's motion to dismiss with respect to Hunsinger's claims for violations of 47 C.F.R. § 64.1200(c)(2) and (d), promulgated pursuant to 47 U.S.C. § 227(c).

### A

Alpha Cash contends that Hunsinger has failed to plausibly plead a violation of 47

- 4 -

U.S.C. § 227(c)(5) because the delivery restrictions in 47 C.F.R. §§ 64.1200(c)(2) and (d) apply only to residential telephones, and Hunsinger pleads that he was contacted on his cellular telephone. Hunsinger responds that these provisions apply to cellular telephones that are used for residential purposes, and he posits that his cellular telephone is used for personal and household purposes.

B

Section 227(c)(1) authorizes the Federal Communications Commission ("FCC") to promulgate regulations on telephone solicitations. *See* 47 U.S.C. § 227(c)(1) ("[T]he Commission shall initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."). Based on this authorization, "the FCC issued regulations prohibiting 'person[s] or entit[ies] [from] initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless [the] person or entity has instituted [certain listed] procedures for maintaining' a do-not-call list." *Charvat v. NMP, LLC*, 656 F.3d 440, 443-44 (6th Cir. 2011) (alterations in original) (quoting 47 C.F.R. § 64.1200(d)). If a person or entity violates these delivery restrictions, § 227(c)(5) grants a right of private action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection."

Although defendants are correct that 47 C.F.R. §§ 64.1200(c) and (d) state that these procedures apply to persons and entities making telemarketing calls to "a residential telephone subscriber," the regulations also state that "[t]he rules set forth in paragraph (c) and

- 5 -

(d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers" as described in a 2003 FCC order ("2003 Order"). *See* 47 C.F.R. § 64.1200(e) (citing *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014 (2003)).  In the 2003 Order, the FCC explained that "it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections[,]" and that "wireless subscribers may participate in the national do-not-call list."  18 F.C.C. Rcd. at 14039.  And other courts have held that cellular telephones can qualify as residential telephones, so long as a plaintiff pleads that the cellular telephone is used for residential purposes.  *See, e.g., Callier v. Nat'l United Grp., LLC*, 2021 WL 5393829, at *9 (W.D. Tex. Nov. 17, 2021) ("[Defendant's] claim that § 64.1200(d) does not apply to cell phones is therefore erroneous; it applies to any cell phone being used as a residential phone."); *Smith v. Truman Rd. Dev., LLC*, 2020 WL 2044730, at *10 (W.D. Mo. Apr. 28, 2020) (holding that "[a] cell phone user can qualify as a residential telephone subscriber under 47 C.F.R. § 64.1200(c) and (d)," and collecting cases); *see also Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 131 (N.D. Tex. 2020) (Pittman, J.) (rejecting defendants's contention that "cell phones, as a matter of law, cannot be 'residential subscribers,'" in the context of a motion to certify a class); *but see Callier v. GreenSky, Inc.*, 2021 WL 2688622, at *6 (W.D. Tex. May 10, 2021) ("Plaintiff does not cite—and the Court is not aware of—any authority that has found § 64.1200(d)(1) applicable to cellphones.  Accordingly, the Court finds that this claim fails as a matter of

law.").[3]

Hunsinger alleges that his cellular telephone, which is registered on the National Do-Not-Call Registry, is "primarily used for personal, family, and household use." Am. Compl. ¶ 7.04. The court therefore concludes that Hunsinger has alleged sufficient facts for the court to draw the reasonable inference that his cellular telephone is a "residential telephone" for purposes of 47 C.F.R. §§ 64.1200(c) and (d). Consequently, the court denies Alpha Cash's motion to dismiss Hunsinger's claims under these provisions.

IV

The court next addresses Alpha Cash's motion to dismiss Hunsinger's claim under § 227(b)(1)(A)(iii).

A

Alpha Cash contends that Hunsinger has failed to plausibly plead a violation of § 227(b)(1)(A)(iii) because the allegations of his amended complaint do not allow the court to reasonably infer that the telephone calls were made using an ATDS, or that the text messages were sent to him using an ATDS. Hunsinger responds that he has pleaded sufficient facts for the court to reasonably infer that an ATDS was used, and that Alpha

---

[3] The court recognizes that there is a split among district courts over whether cellular telephone owners, as a matter of law, can be residential telephone subscribers. Although the court now holds that Hunsinger can qualify as a residential telephone subscriber within the meaning of 47 C.F.R. §§ 64.1200(c) and (d) because he pleads that he received telephone calls and text messages on a cellular telephone that was used for residential purposes, the court may reconsider this conclusion at a later stage in this court if developments in the law so warrant.

Cash's arguments are more appropriately considered on motion for summary judgment.

B

Section 227(b) of the TCPA makes it unlawful for any person to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). Section 227(b)(1)(A)(iii) is violated if: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system [or an artificial or prerecorded voice]; (3) without the recipient's prior express consent." *Cunningham v. Nationwide Sec. Sols., Inc.*, 2017 WL 10486988, at *2 (N.D. Tex. Nov. 2, 2017) (Lynn, C.J.) (alteration in original) (quoting *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)). "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Last year, the Supreme Court resolved a circuit split "regarding whether an autodialer must have the capacity to generate random or sequential phone numbers," or whether an ATDS "need only have the capacity to store numbers to be called and to dial such numbers automatically." *Facebook, Inc. v. Duguid*, ___ U.S. ___, 141 S. Ct. 1163, 1168 (2021) (internal quotations omitted). The Court held

that, "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id.* at 1167. Thus to establish a claim under § 227(b), "the equipment in question must use a random or sequential number generator," not merely auto-dial stored numbers. *Id.* at 1170.

Chief Judge Lynn has held that "[s]imply alleging the use of an ATDS, without more, is insufficient to sustain a TCPA claim." *Cunningham*, 2017 WL 10486988, at *3. She has also observed that "courts have noted the difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery . . . ." *Id.* (quoting *Hickey v. Voxernet LLC*, 887 F.Supp.2d 1125, 1129-30 (W.D. Wash. 2012)).

In light of this difficulty, courts have allowed plaintiffs to "rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages to raise an inference that an ATDS was used." *Jones v. FMA All. Ltd.*, 978 F.Supp.2d 84, 87 (D. Mass. 2013) (quoting *Gragg v. Orange Cab Co.*, 942 F.Supp.2d 1111, 1114 (W.D. Wash. 2013)); *see Schley v. One Planet Ops Inc.*, 445 F.Supp.3d 454, 459-60 (N.D. Cal. 2020) (explaining factors that support an inference of ATDS use in the context of text messages, such as: generic messages, identical messages sent to multiple parties at the same time, and the use of an SMS short code to send the message). In the context of allegations related to telephone calls, courts have also allowed plaintiffs to rely on indirect allegations, such as assertions of "dead-air time" during the call. *See Cunningham*, 2017 WL 10486988, at *3.

C

Hunsinger alleges that Alpha Cash "used an ATDS system that uses a random or sequential number generator." Am. Compl. ¶ 6.47. And he asserts that Alpha Cash contacted him about buying his real property, and that real estate investors like Alpha Cash "use up to date modern technology and skip tracing tools to 1) find real estate that they want to buy and 2) initiate contact with the property owner . . . ." *Id.* ¶ 6.10. Hunsinger also alleges that Alpha Cash uses modern technology that allows it to send up to 500 text messages at once for $1.00.

These allegations, however, do not support a reasonable inference that Alpha Cash used an ATDS with the capacity to *randomly or sequentially* store or produce telephone numbers. Instead, these factual allegations support a reasonable inference that Alpha Cash was interested in purchasing Hunsinger's property, used modern technology to obtain his telephone number, and then contacted him about this property. Even liberally construing Hunsinger's amended complaint to allege that Alpha Cash used an ATDS to randomly or sequentially contact a list of property owners that Alpha Cash had compiled through "modern technology and skip tracing tools," other courts have held that, after *Duguid*, using an autodialer to randomly or sequentially dial numbers from a pre-produced list does not violate § 227(b)(1)(A)(iii). *See, e.g., Samataro v. Keller Williams Realty, Inc.*, 2021 WL 4927422, at *4 (W.D. Tex. Sept. 27, 2021) (dismissing plaintiff's complaint "because it is based on calls made to specific individuals in connection with their property listings, whose numbers were compiled into a preproduced list of phone numbers, as opposed to generated randomly

by an autodialer"); *see also Meier v. Allied Interstate LLC*, 2022 WL 171933, at *1 (9th Cir. Jan. 19, 2022) (mem.) (rejecting, in light of *Duguid*, the argument that any system that stores a pre-produced list of telephone numbers and that could also autodial these stored numbers is an ATDS); *In re Portfolio Recovery Assocs.*, *LLC*, 2021 WL 5203299, at *2-4 (S.D. Cal. Nov. 9, 2021) (collecting cases and rejecting plaintiffs' request to conduct additional discovery as futile because "Plaintiffs do not allege their numbers were generated from a list that was produced in a random or sequential way as they allege Plaintiffs are consumers from which Defendant attempted to collect debts through repeated phone calls and Defendant obtained Plaintiffs' numbers through the use of skip-tracing services").

Even construing Hunsinger's allegations liberally because he is proceeding *pro se*, the court concludes that Hunsinger's contradictory allegations do not allow the court to reasonably infer that Alpha Cash used an ATDS that produced or stored telephone numbers using a random or sequential number generator. Hunsinger has therefore failed to plausibly plead a claim based on a violation of § 227(b)(1)(A)(iii).

Moreover, although the court need only conclude that Hunsinger has failed to allege facts that support a reasonable inference that Alpha Cash used an ATDS using a random or sequential number generator, the indirect allegations in Hunsinger's amended complaint likewise fail to support a reasonable inference that an ATDS *of any kind* was used to send the text messages. As the court explained in *Hunsinger I*, the personal nature of the text messages, the context in which they were sent, and the fact that the text messages were sent from an SMS long code all fail to support a reasonable inference that Alpha Cash used an

ATDS to send the text messages. *See Hunsinger I*, 2021 WL 5040228, at *4. Hunsinger alleges that "[t]he impersonal and generic nature of Defendant[']s text message(s), demonstrate[s] that Defendant utilized an ATDS in transmitting the message." Am. Compl. ¶ 3.22. But the copies of the text messages that Hunsinger attaches to his amended complaint only permit the court to draw the reasonable inference that the messages are neither impersonal nor generic. The messages were sent directly to Hunsinger, and two messages address him by his first name. The direct and personal nature of the text messages weighs against a reasonable inference that Alpha Cash used an ATDS to send the messages. *See Suttles v. Facebook, Inc.*, 461 F.Supp.3d 479, 487 (W.D. Tex. 2020) ("Allegations of directly targeting specific individuals weigh against an inference that an ATDS was used.").

The context in which the text messages were received also cuts against a reasonable inference that they were sent using an ATDS. According to the amended complaint, the text messages were sent after Hunsinger had spoken with an Alpha Cash agent several times by telephone. And the contents of the text messages suggest that they were sent with the purposes of following-up on the prior telephonic interactions and discussing a potential transaction between Alpha Cash and Hunsinger. Although not dispositive, a "pre-existing relationship" between Hunsinger and Alpha Cash, or the fact that Alpha Cash had a "specific reason to contact [Hunsinger]," suggests that an ATDS was not used to send the text messages. *See Schley*, 445 F.Supp.3d at 460.

Finally, the fact that the text messages were sent from an SMS long code telephone number does not support a reasonable inference that an ATDS was used. Hunsinger's alleges

that the text messages were sent from a long code telephone number. *See* Am. Compl. ¶¶ 3.24-25. "The use of a short code [as opposed to a long code] suggests the use of an ATDS." *Schley*, 445 F.Supp.3d at 460. Although the use of a long code "does not preclude the use of an ATDS," it does not support an inference that an ATDS was used either. *Id.*; *Matthews v. Mid City Cannabis Club, Inc.*, 2020 WL 7978499, at *4 (C.D. Cal. Nov. 6, 2020) ("Plaintiff's allegations that Defendant used a 'long code' number does not suggest an ATDS was used.").

The court therefore dismisses Hunsinger's claims under § 227(b)(1)(A)(iii) for failure to state a claim on which relief can be granted.

V

The court turns next to Alpha Cash's motion to dismiss as it relates to Hunsinger's claim under Tex. Bus. & Com. Code Ann. § 305.053.

Alpha Cash argues that Hunsinger has failed to state a plausible claim under Tex. Bus. & Com. Code Ann. § 305.053 because he has failed to plead a violation of the TCPA and there can be no violation of § 305.053 without an underlying valid TCPA claim.

Tex. Bus. & Com. Code Ann. § 305.053 provides a private right of action for a violation of the TCPA. Under § 305.053, a "person who receives a communication that violates 47 U.S.C. Section 227, [or] a regulation adopted under that provision . . . may bring an action in this state against the person who originates the communication . . . ." Tex. Bus. & Com. Code § 305.053(a). Section 305.053 "proscribes only that conduct which is also prohibited by the TCPA. If no violation of the TCPA exists, there is no violation of" Tex.

- 13 -

Bus. & Com. Code § 305.053(a).  *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F.Supp.3d 811, 815 (S.D. Tex. 2014).

As explained, Hunsinger has failed to plausibly allege a violation of § 227(b)(1)(A)(iii), *see supra* § IV(C), but he has plausibly alleged that Alpha Cash violated regulations promulgated pursuant to § 227(c), *see supra* § III(B).  The court therefore grants Alpha Cash's motion to dismiss Hunsinger's claim under Tex. Bus. & Com. Code Ann. § 305.053 to the extent that it relies on an underlying violation of § 227(b)(1)(A)(iii), but otherwise denies Alpha Cash's motion to dismiss Hunsinger's claim under Tex. Bus. & Com. Code Ann. § 305.053.

VI

Although the court is granting Alpha Cash's motion to dismiss, and although Hunsinger has already amended once, the court will grant Hunsinger another opportunity to replead.  "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."  *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  Hunsinger has not stated that he cannot, or is unwilling to, cure the defects that the court has identified.  To the contrary, he explicitly requests leave to amend if the court disagrees with his position on Alpha Cash's motion to dismiss.  Moreover, plaintiffs have cured pleading defects when amending after a motion to

dismiss has been granted. *See, e.g., Reneker v. Offill*, 2010 WL 1541350, at *2, *7 (N.D. Tex. Apr. 19, 2010) (Fitzwater, C.J.) (concluding, after twice granting motions to dismiss, that plaintiff's second amended complaint stated claim on which relief could be granted). And in granting leave to replead, the court takes into consideration that Hunsinger is proceeding *pro se*. *See, e.g., Smallwood v. Bank of Am.*, 2012 WL 32654, at *5 (N.D. Tex. Jan. 6, 2012) (Fitzwater, C.J.) (granting leave to file third amended complaint because plaintiffs were appearing *pro se*).

The court therefore grants Hunsinger 28 days from the date this memorandum opinion and order is filed to file a second amended complaint. If Hunsinger repleads, Alpha Cash may move anew to dismiss, if it has grounds to do so.

\* \* \*

In sum, for the reasons explained, the court grants in part and denies in part Alpha Cash's motion to dismiss, and it grants Hunsinger 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

**SO ORDERED**.

February 24, 2022.

SIDNEY A. FITZWATER
SENIOR JUDGE

- 15 -